ARKANSAS STATE HIGHWAY EMPLOYEES LOCAL 1315, James P. Rowell, Robert C. Conley, Jake Franks, Edwin Shinn, Spencer Y. Land, Walter Mays, Robert Watson and A. D. Tate, Plaintiffs,

v.

Maurice SMITH, Lawrence Blackwell, J. C. Patterson, George Kell and James A. Branyan, Individually and as Commissioners of the Arkansas State Highway Commission; and Henry Gray, Individually and as Director of the Arkansas State Highway Department, Defendants.

No. LR–73–C–229.

United States District Court,
E. D. Arkansas, W. D.

Jan. 23, 1978.

John T. Lavey, Little Rock, Ark., for plaintiffs.

Bill S. Clark, Oscar E. Davis, Jr., Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

HEANEY, Circuit Judge, Sitting by Designation.

The parties are before the Court on cross-motions for summary judgment. Plaintiffs seek declaratory and injunctive relief under 42 U.S.C. § 1983. As there are no material facts in dispute the sole issue for determination is whether the grievance procedure established by the Arkansas State Highway Commission deprives Arkansas State Highway Employees Local 1315 of the right to petition government for the redress of grievances in violation of the First Amendment and the due process and equal protection clauses of the Fourteenth Amendment.[1]

The grievance procedure, adopted by the Commission on May 23, 1973, provides:

> 1. The employee with a complaint or grievance will take this matter up first with his supervisor. (Supervisor in this

---

1. The complaint also alleged that certain plaintiffs were discharged, demoted, or not promoted because of their union activity in violation of the First Amendment and the due process and equal protection clauses of the Fourteenth Amendment. After a pre-trial conference the plaintiffs moved to dismiss these counts with prejudice. The Court granted the motion by an order dated October 19, 1977.

sense means the person who usually gives the orders directly. His title may be squad boss, lead man, foreman, etc.) It is the duty of the supervisor to give an impartial hearing, make a thorough investigation and if possible, make a decision which is mutually agreeable. The supervisor may keep a brief informal record of the matter for his own information and for reference later if the grievance is taken to the Employer Representative.

2. If a settlement is not reached with the supervisor, the employee should submit his complaint in writing to the appropriate Arkansas State Highway Department Employer Representative.

For the purpose of dealing with complaints regarding working conditions, the Arkansas State Highway Department Maintenance Engineer is hereby designated as Employer Representative.

For the purpose of handling questions as to wages and hours of ASHD employees, the Arkansas State Highway Department Personnel Officer is hereby designated Employer Representative.

Agents representing Arkansas State Highway Department employees are required to deal exclusively with the designated Employer Representative in the presentation of employee grievances.

3. The Employer Representatives will immediately review all the evidence available to them and if indicated, make further investigation into the matter. After all of the facts have been considered, a written report will be made to the Director. The decision of the Director as to the matters under consideration shall be final. The employee will then be notified in writing of the decision.[2]

The grievance procedure is said to be constitutionally deficient because Local 1315 is not permitted to file a step two written complaint on behalf of a member with the employer representative and cannot effectively process a grievance insofar as it cannot be present at either the first or third steps of the procedure. In particular, Local 1315 complains that it was not permitted to file the step two written grievances of Robert Watson and W. E. Hughes.

Robert Watson was discharged by the Highway Commission. He discussed the matter with his supervisor and the supervisor refused to reinstate him. Watson prepared a letter setting out the nature and relevant details of his grievance including a request to Local 1315 to file and process the grievance in his behalf with the employer representative. This letter was sent to Local 1315.

Local 1315 forwarded Watson's letter to the appropriate employer representative and included its own letter stating that it represented Watson and desired to set up a meeting. The employer representative did not answer Local 1315. Instead, the employer representative sent Watson a copy of the grievance procedure.

As Local 1315 did not receive an answer from the employer representative it sent a letter to the director explaining the situation and demanding that he order the employer representative to grant a meeting. Local 1315 was advised by the director that forwarding an employee's step two written complaint to the employer representative was an improper procedure. The employee was required to submit his step two written complaint directly to the employer representative. Watson subsequently submitted his step two written complaint directly to the employer representative.

---

**2.** On June 25, 1975, the Highway Commission adopted a new grievance procedure substantially identical to the old grievance procedure. An intermediate step was inserted that requires the employee to discuss his grievance with the District Engineer or Division Head, if he is dissatisfied with the supervisor's decision, before going to the employer representative. The new procedure requires the employee's written complaint to the employer representative to contain the nature of the grievance, the date the grievance arose, the name of the employees involved, the relief requested, and any other matters the employee feels are pertinent. The District Engineer or Division Head must assist the employee in preparing the complaint and, after the employee signs the complaint, must forward it to the employer representative. Certain time limits are also specified.

A meeting was held in which Local 1315 represented Watson. Watson was later notified in writing that his grievance had been carefully considered, but it had been determined that the discharge was justified.

W. E. Hughes was temporarily suspended without pay by the Highway Commission. After filing a grievance under the grievance procedure existing prior to May 23, 1973, the director by letter informed Hughes that a new grievance procedure existed and Hughes must follow it. In accordance with the grievance procedure, Hughes discussed the matter with his supervisor. Hughes was dissatisfied with the supervisor's decision. Hughes then wrote a letter to Local 1315 explaining the nature of his grievance and requesting Local 1315 to file and process the grievance on his behalf with the employer representative.

Local 1315 forwarded Hughes' letter to the employer representative with its own letter stating that it wanted to discuss the matter. The employer representative did not answer Local 1315. The employer representative, however, did contact Hughes and suggest a meeting date. Hughes filed his step two written complaint directly with the employer representative on the same day as the meeting. At the meeting Local 1315 represented Hughes and Hughes' grievance was discussed. Hughes was later notified that his grievance would remain under advisement until the pending legal action was decided.

It is clear from the above that under the grievance procedure promulgated by the Highway Commission, the Highway Commission will not consider an employee's grievance unless the employee submits his step two written complaint directly to the employer representative.

■ Freedom of association protects the right of public employees to join a union. *Thomas v. Collins*, 323 U.S. 516, 532, 65 S.Ct. 315, 89 L.Ed. 430 (1945); *Norbeck v. Davenport Community Sch. Dist.*, 545

F.2d 63, 67 (8th Cir. 1976), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977); *American Federation of State, Co., & Mun. Emp. v. Woodward*, 406 F.2d 137 (8th Cir. 1969). This right includes more than passive membership. It includes the public employee's right to advocate the union's views and the union's right to engage in advocacy on behalf of its members. *Hanover Tp. Fed. of Teach. L. 1954 v. Hanover Com. Sch. Corp.*, 457 F.2d 456, 459–460 (7th Cir. 1972); *American Federation of State, Co., & Mun. Emp. v. Woodward, supra* at 139. It encompasses the right of a union to file a grievance on behalf of its members and assist a member in making a presentation of that grievance. *Cf. United Mine Workers v. Illinois Bar Ass'n.*, 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967); *Brotherhood of R. Trainmen v. Virginia ex rel. Virginia State Bar*, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964); *Parsons v. Carmichael*, 82 LRRM 2513 (E.D.Ark. 1972); *City of Fort Smith v. Arkansas State Council No. 38*, 245 Ark. 409, 433 S.W.2d 153 (1968). This right is one aspect of a public employee's right to petition government for the redress of grievances. *See United Mine Workers v. Illinois Bar Ass'n., supra* at 222, 88 S.Ct. 353.

■ The Court must first consider whether the grievance procedure is unconstitutional insofar as it prohibits Local 1315 from forwarding a step two written complaint prepared by the employee to the employer representative. The Court concludes that it is since it prevents a union from filing a grievance on behalf of its members. Thus, the Highway Commission erred in refusing to accept the step two written complaints filed by Local 1315 on behalf of Watson and Hughes.[3]

The Court next considers whether the grievance procedure is unconstitutional insofar as it prohibits Local 1315 from being present at each step of the grievance procedure.

---

**3.** This does not prevent the Highway Commission from prescribing reasonable regulations regarding the contents of a complaint such as required under the new grievance procedure.

The Court notes that nothing in the new grievance procedure prohibits Local 1315 from assisting the employee in the preparation of the complaint.

■ Local 1315 argues that the freedom to petition the government for the redress of grievances mandates its presence at each step of the procedure, relying by analogy to the National Labor Relations Act, 29 U.S.C. §§ 141 *et seq.* Although § 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a) requires that the union be given the opportunity to be present at a grievance proceeding, this is not, as plaintiffs argue, dispositive of the issue before the Court. The National Labor Relations Act and § 1983 are not coextensive in the public employment field.[4] *Hanover Tp. Fed. of Teach. L. 1954 v. Hanover Com. Sch. Corp., supra* at 461.

What is critical is that the grievance procedure provides the employees with the opportunity to present their grievances with assistance by the union at a meaningful time and in a meaningful manner. *See Norton v. Blaylock,* 409 F.2d 772 (8th Cir. 1969). The grievance procedure did give the employee and the union this opportunity. The union represented both Watson and Hughes at the meetings with the employer representative. At the meetings the union could supplement the investigation undertaken by the supervisor and conduct its own presentation. Moreover, the union was free to communicate with the Highway Commission about the grievance at any step in the procedure, although it was unable to be present at every step. Thus, the union was not deprived of its right to petition government for the redress of grievances because it was unable to be present at each step of the grievance procedure.

■ In view of the prior discussion it follows that plaintiffs' motion for summary judgment will be granted in part and denied in part; the cross-motion of the defendants will be granted in part and denied in part.[5] The grievance procedure promulgated by the Highway Commission is unconstitutional to the extent the union is prohibited from forwarding a step two written complaint prepared by the employee to an employer representative. The grievance procedure is constitutional insofar as the union is prohibited from being present at every step of the procedure. As Watson and Hughes were not given the benefit of a constitutional grievance procedure, the Highway Commission is directed to receive a step two written complaint from the union on behalf of Watson and Hughes filed within twenty days from the entry of this order. The Highway Commission is further directed to consider their grievances anew in accordance with the grievance procedure.

An order will be entered accordingly.

---

**4.** Neither does the fact that Title VII allows a union to maintain an action against the employer on behalf of its members to proscribe discriminatory practices dispose of the issue. This right is granted pursuant to statutory authority.

**5.** Defendants' affirmative defense that the plaintiffs have failed to exhaust their state administrative remedies provided by the grievance procedure has no merit. A plaintiff is not required to first seek redress in a state forum if a remedy under the Civil Rights Act is available. *Prieser v. Rodriguez,* 411 U.S. 475, 477, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

Although for purposes of these motions the defendants do not take issue with Local 1315's contention that it has standing to sue, the Court concludes that Local 1315 does have standing. *See Arkansas Ed. Ass'n v. Board of Ed., Portland, Ark. Sch. Dist.,* 446 F.2d 763, 766 (8th Cir. 1971); *United Federation of Postal Clerks, AFL–CIO v. Watson,* 409 F.2d 462, 469–470 (D.C.Cir.), *cert. denied,* 396 U.S. 902, 90 S.Ct. 212, 24 L.Ed.2d 178 (1969); *Smith v. Board of Education of Morrilton Sch. Dist. No. 32,* 365 F.2d 770, 776–778 (8th Cir. 1966).