RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0277p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

---

JADE THOMPSON,

                *Plaintiff-Appellant*,

v.

MARIETTA EDUCATION ASSOCIATION; MARIETTA CITY
SCHOOL DISTRICT BOARD OF EDUCATION,

                *Defendants-Appellees*.

> No. 19-4217

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:18-cv-00628—Michael H. Watson, District Judge.

Argued:  August 5, 2020

Decided and Filed:  August 25, 2020

Before:  GIBBONS, GRIFFIN, and THAPAR, Circuit Judges.

---

#### COUNSEL

**ARGUED:**  Robert Alt, THE BUCKEYE INSTITUTE, Columbus, Ohio, for Appellant.  Scott A. Kronland, ALTSHULER BERZON LLP, San Francisco, California, for Appellee Marietta Education Association.  Bryan M. Smeenk, BRICKER & ECKLER LLP, Columbus, Ohio, for Appellee Marietta City School District Board of Education.  **ON BRIEF:**  Robert Alt, THE BUCKEYE INSTITUTE, Columbus, Ohio, Andrew M. Grossman, Patrick T. Lewis, BAKERHOSTETLER LLP, Washington, D.C., for Appellant.  Scott A. Kronland, P. Casey Pitts, ALTSHULER BERZON LLP, San Francisco, California, Eben O. McNair, IV, Timothy Gallagher, SCHWARZWALD MCNAIR & FUSCO LLP, Cleveland, Ohio, for Appellee Marietta Education Association.  Bryan M. Smeenk, Nicole M. Donovsky, BRICKER & ECKLER LLP, Columbus, Ohio, for Appellee Marietta City School District Board of Education.

————————————

**OPINION**

————————————

THAPAR, Circuit Judge.   By signing on the dotted line, public employees accept the government as their employer.   In Ohio, the law requires them to also accept a union as their exclusive bargaining representative.   It's a take-it-or-leave-it system—either agree to exclusive representation, which is codified in state law, or find a different job.   This take-it-or-leave-it system is in direct conflict with the principles enunciated in *Janus v. AFSCME*, 138 S. Ct. 2448 (2018).   But when the Supreme Court decided *Janus*, it left on the books *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984).   And because *Knight* directly controls the outcome of this case, we affirm the district court's decision upholding the challenged Ohio law.

I.

Marietta is a small town in southeast Ohio that sits on the banks of the Ohio and Muskingum Rivers.   The Marietta Board of Education governs the town's public schools.   And the Marietta Education Association, a teacher's union, serves as the exclusive bargaining representative for the school district's employees.

Jade Thompson is a Spanish teacher at Marietta High School.   After the Supreme Court's decision in *Janus*, Thompson sued the Marietta Education Association and the Marietta Board of Education, arguing that Ohio's scheme of exclusive public-sector union representation violates the First Amendment.

Under Ohio law, a union may become the exclusive bargaining representative for all public employees in a bargaining unit.   To become an exclusive representative, the union must submit proof that a majority of the bargaining unit's members wish to be represented by the union.   Ohio Rev. Code § 4117.05(A)(1).   Once a union has done so, public employers are required to collectively bargain with it.   *Id.* § 4117.04.   And they are prohibited from bargaining with anyone else.   *Id.*   This includes both individual employees and other labor organizations.

Ohio law sets a broad scope for collective-bargaining negotiations. Public employers *must* bargain over "[a]ll matters pertaining to wages, hours, or terms and other conditions of employment" as well as over any "existing provision of a collective bargaining agreement." *Id.* § 4117.08(A). And public employers *may* bargain over almost all other topics. *Id.* § 4117.08(C). This latter category includes "the functions and programs of the public employer"; the employer's "overall budget" and "organizational structure"; the methods "by which governmental operations are to be conducted"; and even "the mission of the public employer as a governmental unit." *Id.*

Thompson is not a member of the Marietta Education Association. She objects to its policies and to any association with it. But because the union has been designated as her bargaining unit's "exclusive representative," the union has a statutory right to represent her "for the purposes of collective bargaining." *Id.* § 4117.05(A). So while Thompson believes layoffs should occur based largely on merit rather than seniority, the union advocates to the contrary. And while Thompson believes teachers' benefits should be cut to save academic programs, the union takes a different view. These are just a few of the many issues on which Thompson and the union disagree. Indeed, when Thompson's late husband—Representative Andy Thompson— ran for the Ohio General Assembly, the union published advertisements and sent emails to teachers at Marietta High School opposing his candidacy.

Two years ago, Thompson filed this lawsuit, arguing that Ohio's system of exclusive public-sector bargaining violates her First Amendment rights. Both parties soon moved for summary judgment. The district court held that Thompson's challenge was foreclosed by *Knight* and thus granted summary judgment to the defendants. This appeal followed.

II.

Thompson raises two challenges to Ohio's system of exclusive representation: (1) that it violates her rights to be free from compelled speech and association, and (2) that it violates her right to meaningfully communicate with the government. We agree with the district court that both arguments are foreclosed by Supreme Court precedent.

A.

Thompson's first claim is that Ohio law impermissibly allows the Marietta Education Association to speak on her behalf during collective-bargaining sessions, and that this amounts to compelled speech and association in violation of the First Amendment. *See* Ohio Rev. Code §§ 4117.05(A), 4117.11(B)(6).

The First Amendment protects "both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). Likewise, "[f]reedom of association . . . plainly presupposes a freedom not to associate." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984). These rights capture the more basic truth that "[f]orcing free and independent individuals to endorse"—either implicitly or explicitly—"ideas they find objectionable is always demeaning." *Janus*, 138 S. Ct. at 2464. The Supreme Court has thus explained that "designating a union as the exclusive representative of nonmembers substantially restricts the nonmembers' rights." *Id.* at 2469. And the Court has deemed exclusive public-sector bargaining "a significant impingement on associational freedoms that would not be tolerated in other contexts." *Id.* at 2478.

Given the Supreme Court's language, one might think that Thompson should prevail. Yet Supreme Court precedent says otherwise. And lower courts must follow Supreme Court precedent. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997).

The primary precedent blocking Thompson's way is *Knight*. There, a group of non-union community college instructors challenged Minnesota's collective-bargaining statute. They objected to the State's recognition of an exclusive representative to speak for all employees at "meet and confer" sessions. These sessions concerned subjects outside the scope of mandatory collective bargaining. *See* 465 U.S. at 274–78. But the Supreme Court rejected the challenge. It held that Minnesota had "in no way restrained [the instructors'] freedom to speak . . . or their freedom to associate or not to associate with whom they please." *Id.* at 288. To the contrary, the Court held that the instructors' First Amendment rights were not unduly infringed because they remained "free to form whatever advocacy groups they like" and were "not required to become members of [the union]." *Id.* at 289.

*Knight* controls here.  If allowing exclusive representatives to speak for all employees at "meet and confer" sessions does not violate the First Amendment, we see no basis for concluding that the result should be different where the union engages in more traditional collective-bargaining activities.  It appears that every other circuit to address the issue has agreed.  *See, e.g.*, *Reisman v. Associated Faculties of Univ. of Maine*, 939 F.3d 409 (1st Cir. 2019); *Mentele v. Inslee*, 916 F.3d 783 (9th Cir. 2019); *Bierman v. Dayton*, 900 F.3d 570 (8th Cir. 2018); *Hill v. Serv. Emps. Int'l Union*, 850 F.3d 861 (7th Cir. 2017); *Jarvis v. Cuomo*, 660 F. App'x 72 (2d Cir. 2016) (summary order).

Thompson responds, arguing that *Knight* did not involve a compelled-representation challenge.  But in *Knight*, the Court framed the question presented in broad terms:  whether the "restriction on participation in the nonmandatory-subject exchange process violates the constitutional rights of professional employees within the bargaining unit who are not members of the exclusive representative and who may disagree with its views."  465 U.S. at 273.  Even assuming plaintiff's compelled-representation theory is technically distinguishable, such a cramped reading of *Knight* would functionally overrule the decision.  And that is something lower court judges have no authority to do.

To be sure, *Knight*'s reasoning conflicts with the reasoning in *Janus*.  But the Supreme Court did not overrule *Knight* in *Janus*.  And when an earlier Supreme Court decision "has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions."  *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989).  We do so here.

B.

Thompson's second claim fares no better.  She argues that Ohio's system of exclusive representation unconstitutionally burdens her First Amendment right to engage with the government through speech, association, and petition.  Thompson's theory seems to be that by allowing the Marietta Education Association to serve as her exclusive representative, Ohio unconstitutionally tilts the playing field against her speech.

But this argument conflicts with two Supreme Court decisions. First, we consider *Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463 (1979) (per curiam). There, the Court held that the First Amendment imposes no "affirmative obligation on the government to listen, to respond[,] or . . . [to] bargain." *Id.* at 465. And since the government has no obligation to bargain with Thompson, it is difficult to see how the government's decision to bargain with someone else violates her rights.

Second, in *Knight*, the Supreme Court recognized that it was "doubtless true that the unique status of the exclusive representative . . . amplifies its voice in the policymaking process." 465 U.S. at 288. But amplification "is inherent in government's freedom to choose its advisers." *Id.* And a "person's right to speak is not infringed when government simply ignores that person while listening to others." *Id.* Thus, *Knight* again forecloses Thompson's claim.[*]

\*\*\*

This case presents First Amendment questions of considerable importance. But they are controlled by a fair reading of the Supreme Court's precedents. We therefore affirm the district court's order granting summary judgment for the defendants.

---

[*]The district court also held that Thompson waived this second claim during an earlier stage of the proceedings. But we see things differently. To be sure, Thompson did not press this theory while seeking a preliminary injunction. And some of her arguments during the preliminary injunction hearing implicitly contradict the theory. Yet our review of the record does not reveal an "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993). To the contrary, Thompson asserted the theory in her complaint, pressed it in her motion for summary judgment, and continues to pursue it on appeal. Likewise, at every stage the defendants have had a full opportunity to respond to this theory and have in fact done so. *See United States v. Dillard*, 438 F.3d 675, 682 n.1 (6th Cir. 2006) (finding no waiver where the opposing party "had a full and fair opportunity to consider and address the issue"). Fortunately, the district court addressed the merits of Thompson's claim in the alternative. And since both parties fully briefed Thompson's theory in the district court and on appeal, there has been no impediment to our consideration of the issue.